IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO.: 4:23cv04963 RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| $22,210.00 IN UNITED STATES CURRENCY, | ) ) | |
| | ) | |
| Defendant *in Rem*. | ) | |

**UNITED STATES' COMPLAINT FOR FORFEITURE *IN REM***

The Plaintiff, United States of America, brings this complaint and alleges as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

**NATURE OF THE ACTION**

1. This is a civil action *in rem* to forfeit to the United States of America funds in the amount of $22,210.00 in U.S. Currency ("Defendant Currency"), pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C). The United States seeks forfeiture based upon a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

   a.  money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable

        to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act;

    b.    property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

    c.    property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

    d.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7) and;

    e.    proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355. This Court has *in rem* jurisdiction over the Defendant Currency pursuant to:

    (a)    28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the District of South Carolina; and

    (b)    28 U.S.C. § 1355(b)(1)(B), because venue properly lies in this district pursuant to 28 U.S.C. § 1395.

## THE DEFENDANT *IN REM*

3. The Defendant Currency consists of $22,210.00 in United States currency seized from Christian Martinez ("Martinez") by an officer of the Florence County Sheriff's Office ("FCSO") on June 1, 2023, in Florence County, South Carolina.

4. The seizure was adopted by the Homeland Security Investigations ("HSI") for federal forfeiture. The Defendant Currency is currently on deposit in this district in an account under the control of United States Customs and Border Protection ("CBP").

5. In accordance with the provisions of 19 U.S.C. § 1606, the Defendant Currency has a total domestic value of approximately $22,210.00.

## KNOWN POTENTIAL CLAIMANTS

6. The known individuals whose interests may be affected by this litigation are:

   a. Christian Martinez, may have an interest in the Defendant Currency because he was the driver of the vehicle from which it was seized and because he filed an administrative claim with HSI on August 14, 2023, contesting administrative forfeiture of the Defendant Currency.

## BASIS FOR FORFEITURE

7. Pursuant to the pleading requirements of Supplemental Rule G(2)(f), Plaintiff alleges that there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency is subject to forfeiture to the United States, based in part upon the following:

a. Interstate 95 ("I-95") is a known corridor for the transportation of illegal drugs and drug-related currency. Miami, Florida is a "source city" for illegal drugs; that is, the Miami area is a principal source of supply for large-scale quantities of drugs for re-distribution throughout the Eastern and Southeastern United States. The drug trafficking business is primarily an all-cash business, which necessitates that those involved in drug trafficking often transport large amounts of currency.

It is common in the drug trafficking business for money to be bundled in increments of $1,000 to $10,000, depending on the size of the transaction. Such bundling of currency makes it easy for a buyer to exchange a specified number of bundles for a specified amount of drugs and eliminates the need to count each and every bill, particularly among individuals familiar with each other. Those involved in drug runs to Florida through North Carolina and South Carolina often have large amounts of currency when traveling in the direction of Florida. During and after traffic stops, it is common for those involved in transporting illegal drugs and/or drug-related currency to give false, changing, inconsistent, and/or incomplete explanations regarding the nature and purposes of the trip, or to give explanations which defy common sense.

b. On June 1, 2023, Corporal Earl Rauch ("Rauch") of the Florence County Sheriff's Office observed a white Chevrolet Equinox Sports SUV, bearing a Florida tag traveling southbound on I-95. Rauch observed that the vehicle was traveling faster than the posted speed limit. The SUV was traveling 65 mph in a 60-mph zone. Rauch approached the vehicle and spoke with the driver and sole occupant, Christian Martinez

(Martinez). Rauch observed chairs and an opened television box in the rear of the SUV. He did not see any luggage in the vehicle. Rauch asked Martinez if he was moving and Martinez responded, "No, I picked this stuff up while I was up North." Martinez provided a Florida commercial driver's license and an automobile rental agreement. He told Rauch that he was headed back to Florida from Newark, N.J. The rental agreement documented that Martinez had rented the vehicle in N.J.

  c. Rauch asked Martinez to come to his patrol car and Rauch completed the enforcement action while speaking with Martinez. Martinez stated that he had flown to N.J. but had rented the vehicle to fly back because a flight was too expensive. Rauch asked Martinez what type of work he does. Martinez initially responded with deflecting questions about his stop and what was happening on the interstate. Eventually Martinez stated that he worked for Roush Cars. Martinez said that he tested prototype vehicles and provided reviews of the vehicles. Martinez says that he travels to wherever he is told to pick up a vehicle and drive it to another location for his review. Martinez said that he had test driven a BMW but could not identify the location where he picked up the vehicle or dropped it off. Martinez said that he had traveled to N.J. on May 29, tested the vehicle and was now on his way back home. Rauch detected signs of deception in Martinez's demeanor and this, in addition to the statements Martinez was making, and the circumstances of his travel, led Rauch to suspect that Martinez was engaged in criminal activity.

  d. Rauch requested consent to search the vehicle and Martinez declined to give consent. Rauch called for backup and asked Martinez if there was anything illegal in the

5

vehicle. Martinez stated there was not.

    e.    Sergeant Brandon Braxton ("Braxton") with the Florence County Sherriff's Office and Corporal Tyler Nicholson ("Nicholson") with the Florence County Sherriff's Office arrived at the scene. Rauch deployed his canine, Dukat, for a free air sniff. Dukat, a narcotics detection canine alerted to the vehicle and a search was conducted. During the vehicle search Rauch observed a red box with a clear lid, which contained cups and knives. The container was covered by a white powdery residue which field tested positive for methamphetamine. Rauch opened the container and the inside smelled like narcotics.[1]

    f.    Rauch located a Burger King bag under the passenger seat. The bag contained a broken-up hamburger that was covering a large amount of currency at the bottom of the bag. The U.S. currency consisted of different denominations and was rubber banded. The Burger King receipt reflected that the purchase was made in Batavia, N.Y. at 7:35 pm on May 30, 2023.

    g.    Rauch discovered a vape pen and a plastic bag containing a green leafy substance consistent with Marijuana in the front area of the vehicle.

    h.    Martinez was read his rights by Rauch and arrested for possession of Marijuana and transported to the Florence County Detention Center. Martinez was issued a warning for the traffic violation. The vehicle was towed and impounded due to Martinez being arrested and no other driver present.

---

1 The red box field tested positive for Methamphetamine and lab testing is pending.

    i.  During the ride to the detention center Martinez admitted that the green leafy substance, which he had initially claimed was hemp, was in fact marijuana. Martinez stated the money was from a Yamaha jet ski he sold to someone in New Jersey. He did not have proof of the sale, nor could he provide details, such as the model of the jet ski. Martinez said the title and paperwork for the sale were in Florida. When Rauch inquired how this was possible if Martinez was traveling back from N. J. where he had just completed the sale, Martinez responded with a convoluted explanation, saying that the buyer had driven to Florida to pick up the jet ski and taken it back to N.J. Then Martinez said he then flew to N.J. to receive his cash payment and drove back because he did not want to fly with the money. Martinez claimed he had provided the buyer in N.J. with a bill of sale, but that the title for the jet ski was still in Florida.

    j.  Subsequent drug tests by the Florence County Sheriff's Office Forensic Service's unit determined that the green leafy substance found in the vehicle constituted marijuana and that a brown liquid inside of the vape pen contained Delta-9-Tetrahydrocannabinol.

    k.  Rauch and K-9 Dukat have received extensive training in the field of narcotics detection and have been certified by the Police K-9 Services in Scotland Neck, North Carolina since October 2021. Rauch and K-9 Dukat have been involved in numerous dog alerts which resulted in the location and seizure of illegal drugs and money since being certified. K-9 Dukat is trained to alert (i.e., to react) to the odor of chemicals associated with Marijuana, Cocaine, Heroin, Methamphetamine, or anything derived from

these substances.

l.    Martinez has a criminal history which consists of a prior arrest for possession of marijuana and hashish in Fort Myers, Florida.

m.    Martinez gave no explanation on a legitimate source for the money or any legitimate use for the funds. As well, when Rauch explained the process of asset forfeiture, Martinez claimed to be familiar with the process.

n.    HSI seized the United States currency.

o.    The currency was seized by Rauch pending further investigative activities by HSI Charleston. The currency was taken to Synovus Bank, where it was counted and converted to a cashier's check in the amount of $22,210, which was forwarded to FP&F Charleston for processing.

a.    A final count determined that the Defendant Currency totaled $22,210.00 and was comprised of the following denominations:

- 2 five-dollar bills ($10.00)
- 150 twenty-dollar bills (3,000.00)
- 106 fifty-dollar bills ($5,300.00)
- 139 one-hundred-dollar bills ($13,900.00)

p.    Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that the Defendant Currency constitutes, or is traceable to:

a. money furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act; proceeds traceable to such an exchange; or money used and intended to be used to facilitate a violation of the Controlled Substances Act;

b. property involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and/or § 1956(a)(1)(B)(i) and/or 1957;

c. property involved in an illegal money transmitting business, in violation of 18 U.S.C. § 1960;

d. proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7);

e. proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(h).

## **CONCLUSION**

8. By reason of these premises, and pursuant to 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), whereby the Plaintiff's right, title and interest in and to the Defendant Currency relates back to the commission of the act giving rise to the forfeiture, the Defendant Currency has become and is forfeited to the United States of America, to be disposed of pursuant to Supplemental Rule G(7)( c) for Admiralty or Maritime Claims and Asset Forfeiture Actions, 18 U.S.C. § 981(d), 21 U.S.C. § 881(e), and other applicable laws.

WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the Defendant Currency, *in rem*; that a Warrant for the Arrest of the Defendant Currency be issued; that due Notice be given to all interested persons to appear, make claim, answer and show cause why the forfeiture should not be decreed; that the Defendant Currency be decreed condemned and forfeited to the United States of America for disposition according to law; and that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By:  *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100

October 4, 2023

10